FARMERS AND MERCHANTS BANK *v.* BENNETT & CO.

One having the legal title to cotton wrongfully converted by another may waive the tort and sue in assumpsit to recover the value of the property.

(*a*) The petition filed in the present case sufficiently alleged a wrongful conversion by the defendant, and the suit was properly brought in the name of a party to whom the property converted had been pledged as security for a debt.

(*b*) Even if, in such a case, it is necessary to allege a demand for payment and a refusal to pay, the plaintiff's petition was, as to this matter, good as against a general demurrer.

Argued July 16,—Decided August 12, 1904.

Complaint.  Before Judge Taliaferro.  City court of Sandersville.  January 25, 1904.

*Marion Turner* and *E. W. Jordan*, for plaintiff, cited Civil Code, §§ 2895, 2956, 2959, 3889, 4935, 5105; *Ga. R.* 4/443; 78/575; 103/171; 90/698; 113/1010; 74/320; 110/477; 115/23; 22 A. & E. Enc. L. (2d ed.) 866.

*Evans & Evans* and *Rawlings & Howard*, for defendants, cited Civil Code, §§ 3694, 4960; *Ga. R.* 69/661 (2); 73/641 (1); 77/153; 110/779 (2, 3); 69/825; 79/315; 110/480; 4 Cyc. of L. 340 (3).

EVANS, J.　The Farmers and Merchants Bank brought against the firm of Bennett & Co. an action the nature of which will be readily seen from the following allegations set forth in the plaintiff's petition : " On Sepember the 25th, 1900, Dr. L. A. Graybill stored with the Tennille Warehouse Company two bales of cotton, taking said Warehouse Company's receipts for the same. . . The said L. A. Graybill deposited said receipts with petitioner for the purpose of securing an overdraft of his account. Afterwards [he] paid said overdraft and demanded said receipts; and upon search for the same, they could not be found. By reason of the loss of said receipts, petitioner had to pay the said L. A. Graybill the value of the cotton for which said receipts were given by said Warehouse Company. Upon investigation afterwards, it was discovered that the [defendant] had, in some manner unknown to petitioner, obtained possession of said receipts and presented them at the warehouse, secured possession of the two said bales of cotton, and disposed of the same." Plaintiff "never delivered said receipts to defendant, nor authorized them to procure said cotton, nor in any manner gave its consent for defendant to use said cotton in any way, and defendant's disposal of said cotton was without petitioner's knowledge or consent." · The "amount paid by petitioner to the said L. A. Graybill was $96.49, . . . which was the market price of the cotton on the date the said Graybill demanded said receipts from petitioner;" and " by reason of said procurement and disposal of said cotton, defendant is indebted to it in the sum of $96.49, besides interest from the 25th day of September, 1900, at the rate of seven per cent. per annum, which amount defendant refuses to pay."

To this petition the defendant filed a general demurrer. When the case was called for trial, the plaintiff offered to amend the petition so that the suit might proceed in the name of L. A.

Graybill, suing for the use of the Farmers and Merchants Bank. The court rejected this proffered amendment and sustained the demurrer.    To both of these rulings the plaintiff excepted.

In the brief filed in behalf of the defendant in error, counsel very properly concede that "it is a firmly established rule, from which no dissent has been suggested, that when goods or things in action have, under any circumstances, been wrongfully taken or detained or converted, and have been sold or disposed of by the wrong-doer, the owner may sue in tort to recover damages for the taking and carrying away, or the conversion, or he may waive the tort and sue on the implied promise to refund the price or value, as money had and received to the plaintiff's use."    See *Buchanan* v. *McClain*, 110 *Ga.* 477.    Counsel insist, however, that the plaintiff's petition contains "no allegation that the defendant in error's possession of the two bales of cotton was not a legal possession or that [the defendant] obtained possession of said cotton in any manner except in a legal way."    It was not necessary to make any specific allegation to this effect The petition discloses that the defendant came into possession of the warehouse receipts without the consent or knowledge of the plaintiff, presented them at the warehouse, received the two bales of cotton, and disposed of the same, without any authority of the plaintiff.    If this be true, the defendant was guilty of a conversion, no matter how innocently the defendant may have acted from a simply moral standpoint.    *Flannery* v. *Harley*, 117 *Ga.* 483 (2), 485.    From a purely legal standpoint, accepting as true the allegations of fact relied on for a recovery, the defendant's procurement of the warehouse receipts was wrongful, as was also the defendant's possession of the cotton and disposal of the same.

The suit was properly brought in the name of the Farmers and Merchants Bank.    In this State, by express statute, property may be pledged as security for a debt by mere delivery of a warehouse receipt issued to the owner of the property.    Civil Code, § 2956.    "The transfer or surrender of warehouse receipts, or other symbols representing cotton, may very properly be regarded as equivalent to an actual physical delivery of the cotton itself, and therefore will operate as a constructive delivery passing title."    *Central Company* v. *Exchange Bank*, 101 *Ga.* 353.    At the time

the defendant is alleged to have made a conversion of the cotton which had been pledged to the bank as security, the legal title to this cotton was in the bank; and it had its election to either bring an action of trover against the defendant or to waive the tort and sue in assumpsit to recover the market value of the cotton. The pledger, Graybill, had merely the equitable title to the property; and therefore the trial judge rightly declined to allow the petition to be amended, as proposed by the plaintiff bank, so that the suit might proceed in the name of Graybill for its use.

We gather, from recitals made in the bill of exceptions, that the trial judge sustained the defendant's demurrer on the ground that the plaintiff did not allege any demand for payment before bringing suit, the allegation as to the defendant's refusal to pay the amount sought to be recovered not being the equivalent of an allegation of a proper demand having been made on the defendant. The Civil Code, § 4935, declares that " No demand is necessary to the commencement of an action, except in such cases as the law or the contract prescribes." We have been unable to find any provision of law making a demand for payment a condition precedent to bringing such a suit as the present, which originated in tort and is proceeding upon the legal fiction of an implied promise on the part of the wrong-doer to pay to the plaintiff the value of the property illegally converted. Furthermore, we think the plaintiff's allegation that the defendant " refuses to pay " the amount claimed was, as against a mere general demurrer, a sufficient allegation of a demand, granting that such an allegation was necessary. *Judgment reversed. All the Justices concur.*