3698.   ROGERS *v.* DURRENCE.

In a suit against an agent, to recover money voluntarily paid to him by mistake in fact, the controlling question, in determining his individual liability to repay the money, is whether he still has the money in his possession at the time of the suit, or whether he had, before the suit

42

was brought and before he had any notice of the mistake, paid over to his principal the money received by mistake. If he still has the money in his possession at the time of the suit, or had it in his possession when he received notice of the mistake, he would be personally responsible, although payment to his principal may have been subsequently made by him. In the present case this controlling question was issuable, under the evidence, and the direction of a verdict for the plaintiff was erroneous.

DECIDED MARCH 6, 1912.

Complaint; from city court of Statesboro—Judge Strange. August 4, 1911.

*Homer C. Parker,* for plaintiff in error.

*Remer Proctor, Johnston & Cone,* contra.

HILL, C. J. R. L. Durrence brought suit against S. A. Rogers, alleging that the defendant was indebted to him on an account, in the sum of $250, with interest at the rate of 7 per cent. per annum from February 6, 1911. At the conclusion of the evidence the trial judge directed a verdict for the plaintiff, for the full amount; and the defendant assigns error. The facts in the case, substantially stated, are as follows: The defendant, S. A. Rogers, was a contractor, and had agreed to build a house for Dr. J. T. Rogers, for $1,000. Dr. Rogers made arrangements with the Statesboro Building & Loan Association to borrow $1,000 on the property, and instructed the plaintiff, R. L. Durrence, who was secretary and treasurer of the building and loan association, to pay this money over to S. A. Rogers for the purpose of being used in the construction of the house. This was early in the year 1910. S. A. Rogers was to call on Durrence, secretary and treasurer of the loan company, from time to time as the money was needed, and get from him checks drawn on this fund, to be used for the principal, Dr. Rogers. These checks were all made payable to S. A. Rogers, and in the corner of each check there was this memorandum for identification: "For J. T. Rogers." While the house was being erected Dr. Rogers asked S. A. Rogers to let him have $250 of the money borrowed from the association on this account, promising at the time to replace. it, and, in pursuance of this request, S. A. Rogers gave Dr. Rogers $250 of the money. The evidence does not clearly show what Dr. Rogers meant when he said he would replace the money, —whether he would return it to S. A. Rogers, or to the bank, subject to the check of S. A. Rogers. After the completion of the house Durrence discovered that he had overpaid S. A. Rogers to the

extent of $250, the amount for which he sues. He claims that he made this overpayment through a mistake, and that, after he discovered the mistake, he called upon the defendant to reimburse him this amount, as he had settled with the loan company for his mistake, and that he was entitled to recover this amount as an individual from the defendant. The defendant admitted that he had received, on account of the loan made by the loan company, $250 in excess of the amount which had been borrowed from the company by Dr. Rogers, but claimed that before he discovered the mistake and before any demand had been made on him for this excess, he had disbursed all the money received by him for the benefit and at the direction of his principal, and that he had none of the funds remaining in his hands; that in making the disbursements he was acting simply as the agent of Dr Rogers, and, having paid over to him or used for his benefit all the money, including this excess, he was not individually liable for the same.

The evidence is not clear as to whether the defendant, as the agent of Dr. Rogers, had in fact paid the money over to his principal, or had used it for the benefit of his principal, before the mistake was discovered and his attention called to the fact. There are some circumstances from which the jury might have inferred that the defendant knew that he had been paid the $250 in excess of the amount borrowed by Dr. Rogers from the loan company, before he paid the amount to his principal or used it for his benefit. The Civil Code (1910), § 3608, provides as follows: "If money be paid to an agent by mistake, and he in good faith pays it over to his principal, he shall not thereafter be personally liable therefor. In all other cases he is liable for its repayment. If money be paid by an agent by mistake, he may recover it back in his own name." In the case of *Law* v. *Nunn*, *3 Ga.* 90, it is held: "In actions against agents, for money voluntarily paid by mistake in fact, the true distinction is, where the agent has paid the money over to his principal in good faith he is not personally liable; but when he has not paid the money over, or before such payment he has notice of the mistake, and is required not to pay it, then he is personally responsible, although payment to his principal may have been made." The overpayment made by mistake to the defendant is not disputed. The fact that the money was paid to him to be used for the benefit of his principal in the construction of the house

is not in dispute. While the defendant testified positively that he had paid the money over to his principal, or used it for the benefit of his principal, in good faith, before he had notice of the mistake, there are circumstances apparently in conflict with his testimony on this point, and, under the code section cited, supra, and the decision in *Law* v. *Nunn*, supra, the individual liability of the defendant, as the agent of Dr. Rogers, to refund the $250 paid to him by mistake by the plaintiff depends upon whether as agent he paid the money over to his principal, or used it for his benefit, before he knew of the mistake. We think this question was clearly issuable, and should have been submitted to the jury; and for this reason the trial judge erred in directing a verdict for the plaintiff.

*Judgment reversed.*