MALLORY BROTHERS & COMPANY *et al. v.* COWART.

Where personal property is sold conditionally, and the purchaser pays a part of the price and turns over as collateral security solvent debts to an amount exceeding the balance, and the vendors convert these collaterals to their own use, they cannot recover in

an action of trover for the property, because the purchase money thereof has in fact been paid by the partial payments together with the collaterals so converted. If they bring an action of trover and require bail, and the purchaser is unable to give the bond prescribed by statute in order to retain possession of the property, and if deprivation of possession will be attended with damage, the judge of the superior court, on a proper petition for the purpose, may enjoin the plaintiffs in the action of trover from interfering with the possession of the property pending that action, but should not enjoin the action itself, inasmuch as all the rights of the purchaser growing out of the payment of the purchase money may be made effectual as a defence to that action.

November 25, 1892.

Injunction. Pleading and practice. Before Judge RONEY. Burke county. At chambers, January 19, 1892.

Dorcas Cowart brought her petition against Mallory Bros. & Co. and their attorneys, and against the sheriff, alleging as follows: On September 16, 1889, petitioner, through her agent George Cowart, purchased of Smith & Mallory an engine and fixtures for which she gave them three promissory notes, one due February 1, 1890, for $51.67, and one due October 1st for $286.30, each bearing interest at eight per cent. She was not able to meet them at maturity. The firm of Smith & Mallory was bought out and succeeded by Mallory Bros. & Co., into whose hands her notes fell. During the last of 1890, or the early part of 1891, she made certain payments on said indebtedness, reducing it to about three hundred and eighty or ninety dollars. In the spring of 1891, in consideration of their extending the time of payment of these notes to the fall of that year, and to make them absolutely secure and certain of getting their money, she delivered to Mallory Bros. & Co., as collateral, a note for $150, signed by Emma Jenkins, and payable to George Cowart agent, which matured about October 15, 1891; also a rent note for $150 from the same maker to the same payee, which matured November 1st; a note for $206.17, and mortgage on a roan

horse and a mule, signed by George Cowart agent, due
October 1, 1891; and a rent note for $50, signed by
H. D. Bowe, due about November 1st, and payable to
George Cowart agent. On October 20, 1891, Mallory
Bros. & Co. sued petitioner in bail-trover for the recovery
of said engine, which was levied on October 21, 1891,
by the sheriff. P. B. Smith offered to lend her enough
money to pay the claim held by Mallory Bros. & Co.,
if she would turn over to him as security the collateral
papers held by them, which she agreed to do. They
went at once to the office of the attorneys of Mallory
Bros. & Co., in Waynesboro, for the purpose of settling
said indebtedness, and tendered the attorneys $450, the
amount of the claim of Mallory Bros. & Co., including
attorneys' fees and costs. The attorneys agreed to take
the same and turn over to petitioner the collateral
security, together with all demands against her, but
told her they did not have the collateral notes in their
possession but would receive them by the evening ex-
press. She waited until the arrival of the evening ex-
press in order that she might get the matter settled, but
upon its arrival she was informed by the attorneys that
the papers did not come, but they would certainly be
there the next day. Upon her representation to them
that she could not stay in Waynesboro until the next
day, and that she was running a public gin and was
being subjected to great loss and expense by the same
being stopped by virtue of the levy, they agreed that if
she would leave the money in the hands of her own
attorney to take up the papers, they would instruct the
sheriff to turn over to her the key so that she might
start her engine and gin the next day, which proposi-
tion was agreed to by her and was carried out by the
attorneys for Mallory Bros. & Co. She went home think-
ing the matter was settled. In a few days the sheriff
by order of said attorneys came and locked up her en-

gine again, to her great damage, in spite of the fact that she was standing ready to pay them their money and begging them to take it and give her up her papers. It has developed that Mallory Bros. & Co. cannot deliver to her said collaterals, for that they have converted them to their own use. She is informed and believes that they have sold said notes to A. W. Jones, against whom they have brought suit in trover for the same, October 27, 1891. This collateral was of the value of $556.17. Petitioner is prepared to prove that her indebtedness to said firm was but $413.67, showing that by thus converting her property they have damaged her $142.50. Each day they have kept her engine locked up they have injured her $16 to $20 per day, for she was running a public gin and ginning from eight to ten bales of cotton per day at $2 per bale, whereby she has been injured $250. She has not been able to gin her own cotton on account of said illegal stopping of her engine, and thereby she has been unable to meet some of her just obligations that she could otherwise have met, and she has thus been injured $200. By the illegal and unjust conduct of defendants she has been forced to employ counsel and is thereby loser in the sum of $100, which in equity and good conscience should be charged against defendants. She is still ready and willing to pay Mallory Bros. & Co. the amount of their claim upon their turning over to her said collateral, and hereby tenders the same to them. She is unable to give the bond by statute required in cases of bail-trover, and the sheriff will advertise and sell her property unless the court grant equitable intervention. She might be able to give a forthcoming bond, and is willing for the court to pass an order to that effect. Defendants are threatening to file a bond as by law they are entitled to do, and secure her property, in the face of the fact that they are in equity indebted to her seven or eight hun-

dred dollars. She prays for injunction against further proceeding with the trover suit against her, and against the advertisement and sale of her property; that the sheriff. be required to turn over the engine to her upon her filing a forthcoming bond with him; and that she may have a full and complete accounting with Mallory Bros. & Co., and judgment for any amount that shall be determined to be due her, etc.

Mallory Bros. & Co. demurred to the petition, on the following grounds: (1) There is no equity in the petition. (2) Said bill is altogether unnecessary, as plaintiff could have set up all her matters of complaint by way of defence to the trover suit. (3) Her remedy at law is adequate and complete and will cause less multiplicity of suits, and her petition fails to make out a case. (4) She does not allege the insolvency or the inability to answer in damages of any of the defendants, but alleges her own insolvency. (5) Her alarm about the danger of the sheriff selling the property seized in bail-trover is a windmill of her own construction, and is founded on a misapprehension of the law. (6) A tender after a trover suit is commenced has only the effect of relieving the defendant from further costs, if made at the first term, together with reasonable hire since conversion. (7) For plaintiff to maintain her suit causes a multiplicity of suits about one subject-matter which can be settled in a trover suit. (8) Because of her singular financial condition in being able to pay the debt in full by a constant tender, and yet unable to give a bond for the eventual condemnation money. This demurrer was overruled, and an injunction was granted on terms. Mallory Bros. & Co. excepted.

LAWSON, CALLAWAY & SCALES, by brief, for plaintiffs in error.

W. H. DAVIS and R. O. LOVETT, *contra*.

Lumpkin, Justice.

The errors complained of are the refusal of the judge to sustain a demurrer to the equitable petition of Mrs. Cowart, and the granting of an injunction upon the sworn allegations thereof. These allegations were, of course, admitted to be true so far as the disposition of the demurrer was concerned, and it also appears that they were not denied or contested by answer or evidence before the judge. His action in granting the injunction, therefore, was based upon the assumption that they were true, and we have dealt with the case accordingly. What may appear as the truth when the trover suit is tried we cannot foresee. If the statements contained in the petition before us are properly alleged and proved as a defence to that suit, the plaintiffs cannot recover, but this fact of itself presents no reason for denying them the right to try their case upon its merits, establish their right to recover if they can, and require the defendant to make out her defence by testimony. No action to which there is a complete defence at law should be enjoined merely because it may appear to the judge on the hearing of an equitable petition to restrain its further progress, that plaintiffs could not recover if the same state of facts should be brought out at the trial, because the proper time and place for the development of the facts is at such trial, and it is then and there the facts of the case and the legal result of them should be ascertained and decided by a jury. At any rate, a suit should not, for the reason indicated, be thus cut off by an order at chambers, and consequently, the order granted by the judge in this case should not operate to restrain the plaintiffs from proceeding with their action of trover. It is not perfectly clear that it was intended to do so; but to free the matter from all doubt, we have directed that it shall not be so construed or treated. As a general rule, where equity, for any

proper reason, will interfere with the conduct of a suit, it will take jurisdiction of the entire case, and by final decree settle and adjudicate the whole controversy between the parties. But in the present state of our law, it does not necessarily follow that this should be done where equitable relief may be needed in some matter incidental to, but not affecting, the real merits of the litigation. Acts 1885, p. 36. In the present case, so much of the equitable relief sought by Mrs. Cowart as she is entitled to have, might have been obtained by a plea to the trover suit, setting up the facts contained in her petition and praying for an injunction accordingly, and in our opinion, this, under the act of 1885, above referred to, would have been the better practice. Consequently, if the judge had seen proper to deny her prayer for injunction on the ground that she might have obtained it by such a plea as we have indicated, this court would not have interfered with his discretion in so deciding. It was not, however, an abuse of that discretion to treat Mrs. Cowart's petition, so far as it sought to restrain interference with her possession and use of the engine, as if it had been merely in the nature of a plea to the action brought against her. While this practice was irregular, yet as the action of the court, as modified by the direction herein given, really did substantial justice so far as the equitable relief granted is concerned, we do not feel constrained to reverse the judgment merely because the mode in which the relief was sought and obtained does not conform to what would have been the better and more regular practice in a case of this kind. Treating the petition of Mrs. Cowart as available only to obtain the particular equitable relief to which she was entitled, and as being in the nature of an equitable defence, and not as available to dispose of the entire controversy, and both cases being in the same court and consequently subject

to the control of the judge, his order, in so far as it restrains the sheriff from further interfering with the possession and use of the engine by Mrs. Cowart, may be sustained. We do not wish to be understood as giving our unqualified sanction to this method of procedure; but in this particular case, and in view of its special facts, and because in our opinion substantial justice has been done, the judgment may be allowed to stand to the extent we have indicated. As the facts appeared before the judge at the hearing, Mrs. Cowart had virtually paid for the engine in cash and by the conversion of her securities by Mallory Bros. & Co , and this being true, there was no necessity for taking it from her possession by the harsh process of bail-trover. Indeed, there was no occasion for suing her at all. She alleges her inability to give the bond required by law, and avers that the plaintiffs will give the bond they are permitted to give upon her default, take the property, and thus occasion her great damage and loss in her business. Assuming all these things to be true (which the judge properly did for the purposes of the hearing before him), it was right to protect Mrs. Cowart from unnecessary injury and inconvenience, by allowing the engine to remain where it was. This was accomplished, and at the same time the plaintiffs were sufficiently protected by the bond required of Mrs. Cowart and the restraint put upon her by the judge's order forbidding her from removing the property. Under this order, she will be given an opportunity, without having her business broken up, to defend the trover suit, and the plaintiffs therein are not injured, for they will be allowed to proceed with it and establish their right to recover, if they can. *Judgment affirmed, with direction.*