## 7693.  FINCH *v.* COX COMPANY.

1  A payment made on an unfounded demand can be recovered back when made under an urgent and immediate necessity or to release property from detention.  Civil Code (1910), § 4317.  This code-section should be construed together with section 4116, which is as follows: "Duress consists in any illegal imprisonment, or legal imprisonment used for an illegal purpose, or threats of bodily or other harm, or other means amounting to or tending to coerce the will of the other, and actually inducing him to do an act contrary to his free will." *Fenwick Shipping Co.* v. *Clark,* 133 *Ga.* 43, 44 (65 S. E. 140).

2. As shown by the record, the payment made by the plaintiff was not a voluntary payment, but was made under an urgent and immediate necessity therefor, and to secure the release of her personal property from detention; and, under the particular facts of the case, the defendant could not in equity and good conscience retain it.

3. The verdict for the defendant was contrary to law and the evidence, and the court erred in refusing to grant a new trial.

DECIDED FEBRUARY 1, 1917.

Complaint; from city court of Waycross—Judge McDonald. June 2, 1916.

*Parks & Reed, H. W. Wilson, J. E. English,* for plaintiff.

*J. L. Sweat, C. L. Redding,* for defendant.

BROYLES, P. J.  Under the evidence adduced in this case, the following findings of fact were demanded:  G. S. Finch, the husband of the plaintiff, was a retail grocer in Waycross, Georgia, and owed the defendant (a wholesale grocery company in the same city) $1,408.57. - Mrs. Finch, the plaintiff, was not indebted to the defendant in any amount.  On January 11, 1913, Finch made a general assignment for the benefit of his creditors, and on the same day he left, with his wife and children, for Atlanta, and on the same date shipped to his wife, to Atlanta, a car containing household goods, clothing, and some canned groceries.  On January 15, 1913, Cox, the president of the defendant company, sued out an attachment before a justice of the peace at Waycross, alleging that Finch owed the defendant $1,408.57 and had absconded.  Cox and a deputy-sheriff of Ware county went to Atlanta, located the car consigned to Mrs. Finch, in the railroad yards, and the deputy levied the attachment upon it.  All the property in the car belonged to Mrs. Finch, and her husband had no title thereto.  Among the property in this car was clothing for herself and her minor children.  Mrs. Finch, with her children

and husband, was stopping at a hotel, and their intention was to rent a house and make Atlanta their permanent home. On learning of the attachment Mrs. Finch employed a lawyer, who endeavored to have Cox release the property. Cox refused to do so unless the full amount of Finch's debt was paid to him, stating that otherwise he was going to return the car to Waycross; and he had the deputy secure a bill of lading for the car to that destination. Cox finally agreed to release the car on the payment to him of $800 in cash. The plaintiff in error was unable to make the statutory bond required to release her property, and her lawyer paid to Cox $800, and Cox released the property and gave to the lawyer the following receipt: "Received from Mrs. G. S. Finch the sum of $800, which is paid to me in consideration of the release of levy on car No. 20671, marked A., B. & A., and contents, now attached in yards of A., B. & A. R. R. at Atlanta, Ga. J. M. Cox Co., by J. M. Cox, President." Mr. Cox returned to Waycross with the $800, and credited the amount on his books to "merchandise account." Shortly thereafter involuntary bankruptcy proceedings were filed against Finch, and he effected a compromise of fifty per cent. The claim of Cox's Company was proved in the bankruptcy proceedings, for the full amount of the debt, to wit, $1,408.57, and fifty per cent. of that amount was paid on it. This sum and the $800 which the defendant company had secured from Mrs. Finch amounted to $1,504; Cox himself admitting, on cross-examination: "If you put it so, directly and indirectly, I got $1,504 out of our claim of $1,400, or $100 more than the claim." Mrs. Finch brought suit to recover the $800 which she had paid to secure the release of her property, alleging, that it was paid under an urgent and immediate necessity therefor, and to secure the release from detention of her property which had been wrongfully levied upon under the attachment, and that, whether it was collected on her husband's debt or not, it was paid under duress and without consideration, and that the defendant was not entitled to retain it. Two mistrials of the case resulted, and the third trial resulted in a verdict for the defendant; and the plaintiff excepted.

A payment made to prevent a levy is not under duress where the party had an immediate and adequate remedy at law. *Hoke* v.

17

*Atlanta,* 107 *Ga.* 416 (33 S. E. 412); *Strange* v. *Franklin,* 126 *Ga.* 715 (55 S. E. 943). In both of the cases here cited the party making the payment had a complete and easily available legal remedy to prevent the levy, and, in addition, the payment was made to one who in good conscience could retain it. In the instant case Mrs. Finch was at a hotel in a strange city, to which she had just removed from a distant part of the State. Among her property which was levied on was her household furniture and the wearing apparel of herself and her little children. She was unable to make the statutory bond necessary to secure the release of the attachment. If she had filed a claim to the property and made a "pauper's affidavit" in lieu of bond, her property would not have been released but would have been taken back to Waycross, Georgia, and she would have been obliged to return and there fight out her claim in the courts. The defendant company had no claim against her, its claim being against her husband only. It is unmistakable from the evidence that the $800 which the defendant company received from Mrs. Finch was in fact received as a credit on her husband's debt, notwithstanding the testimony of Cox that he had credited this payment on the books of his company to "merchandise account," and although the defendant company, in the bankruptcy proceedings against Finch, proved its claim for the entire amount originally owed by him, to wit, $1,408.57. If the $800 was not received as a payment on Finch's account, then its retention by the defendant company would be unconscionable, as it otherwise had no claim whatever on the property levied upon, or upon the $800 given to secure the release of that property. "Whenever the plaintiff could recover in a court of equity he can recover in an action for money had and received. Chitty on Con. 474; 2 T. R. 153; 1 Cowper R. 372; 6 Peters, 68." *Phillips* v. *Crews,* 65 *Ga.* 275, 277; *Culbreath* v. *Culbreath,* 7 *Ga.* 64, 68, 69 (50 Am. D. 375).

Under the facts shown by the record it is clear to us that the payment by Mrs. Finch to the defendant was made under an urgent and immediate necessity therefor, and to secure the release of her personal property which had been wrongfully levied upon under an attachment sued out by the defendant; that sections 4317 and 4116 of the Civil Code of 1910 are applicable to her suit, and

that the defendant can not in equity and good conscience retain the money so paid to it. Mrs. Finch is entitled to recover back her money.

Under the foregoing rulings it is unnecessary to pass specifically upon the various grounds of the amendment to the motion for a new trial. As complained of therein, there were errors in the admission and the repelling of evidence, and in the charge of the court. These errors, however, in the light of this decision, will doubtless be eliminated upon the next trial of the case.

　　*Judgment reversed. Jenkins and Bloodworth, JJ., concur.*